MATTHEW G. ELLIOTT, Respondent, *v.* ELIJAH S. SMITH, Appellant, and Others.

*Equitable relief — when the collection of a judgment will not be restrained to await the result of another suit — equitable set-off.*

The doctrine of equitable set-off has never been applied to restrain the collection of a judgment actually obtained, pending the prosecution of an action only just commenced, in anticipation of a possible judgment in the latter action which might be applied in payment of the former judgment, and in ordinary cases such relief will not be granted.

Something more than the mere existence of reciprocal and independent demands is required to authorize a set-off in equity, which is not allowable under the Statute of Set-offs. Circumstances must be shown from which it can be inferred that one debt was contracted on the faith of the other, or that there was an agreement between the parties that the one should be deducted from the other, or some other intervening equity, which renders the interposition of the court necessary for the creditor's protection, and equity decrees a set-off independently of the statute only where mutual debts exist, or where there was either an express or implied agreement of stoppage *pro tanto*, or mutual credits.

APPEAL by the defendant, Elijah S. Smith, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Cattaraugus on the 4th day of December, 1893, continuing in force a preliminary injunction order granted on the 30th day of October, 1893.

*C. Z. Lincoln*, for the appellant.

*A. D. Scott*, for the respondent.

DWIGHT, P. J.:

The action is for the foreclosure of a mortgage of real estate made by the defendant, and the injunction, which is prayed for in the complaint and was granted temporarily on the *ex parte* application of the plaintiff, restrains the defendant from collecting or disposing of a judgment which he has recovered and now holds against the plaintiff, and upon which execution has been issued, until the determination of this action and the sale of the mortgaged premises, and the entry of judgment therein for a deficiency, if a deficiency shall arise on such sale, to the end that the amount of such deficiency may be applied on the defendant's judgment, above mentioned, in payment thereof.

We believe that the granting of the relief here prayed for, aside from the foreclosure of the mortgage, would be entirely unprecedented. So far as we are advised, the doctrine of equitable set-off has never been applied to restrain the collection of a judgment actually obtained, pending the prosecution of an action only just commenced, in anticipation of a possible judgment in the latter action which might be applied in payment of the former judgment. But if, in any conceivable case, equity might possibly grant such relief, it seems very clear that the present, on the undisputed facts, is not such a case. The facts, in addition to those already stated, are, concisely, as follows:

The claim on which the defendant obtained judgment was one of several years' standing against the plaintiff as surviving partner of an insolvent banking firm. From the time of the failure of that firm in 1882, the plaintiff remained insolvent until, under the will of a deceased uncle, which was admitted to probate in the State of Connecticut in May, 1892, he became entitled to personal property of the value of about $18,000. Soon after that time he made an effort to compromise the claims against him, including that of the defendant, at twenty cents on the dollar, representing that he was insolvent, but that his wife would raise the money to pay the compromise if it could be effected at a small figure. The defendant refused to enter into a compromise agreement, and, having ascertained the facts in regard to the legacy in Connecticut, he commenced his action against the plaintiff in November, 1892, and obtained the judgment in question for $1,093.62, which was per-

fected and docketed in Cattaraugus county on the 2d day of June, 1893. On the twenty-eighth day of the same month the plaintiff procured the assignment to himself of the mortgage in suit; and in October commenced this action and procured the preliminary injunction, with an order to show cause, upon the return of which the order was made from which this appeal was taken.

In his complaint the plaintiff alleges that the defendant is insolvent; that the mortgaged premises, which consist of a farm of 100 acres, are worth not to exceed the sum of $2,500, and are incumbered by six several mortgages, all prior in lien to that in suit, aggregating in amount about the sum of $4,500, besides interest, and that the amount of the mortgage in suit, including interest, was $718.67, it having been reduced to that sum, after it came into the plaintiff's hands, by a payment to him of $450, insurance money, under an insurance clause contained in it.

The allegation in the complaint in respect to the value of the farm was supported only by an affidavit of two near relatives of the plaintiff, one of whom is an attorney at law and the other a miller, while the proofs on the part of the defendant contain the affidavits of a very large number of farmers, all of them residents and several of them officials of the town in which the premises are situated, who put the value of the farm at not less than $3,800, while the proofs conclusively show that all of the incumbrances mentioned in the complaint, prior to the mortgage in suit, have been fully paid and discharged, except two which aggregate the sum of $2,200 only.

The allegation of the insolvency of the defendant is not denied by him, except that his affidavit states that no judgment has ever been recovered against him; but, of course, the fact of the defendant's insolvency is of no effect to establish an equity in favor of the plaintiff's case if it be true that his specific lien is, itself, ample security for the payment of his claim.

Upon all the facts thus disclosed we think the plaintiff fails to establish any equities which entitle him to the extraordinary remedy of an injunction. He took the assignment of the mortgage after the defendant recovered his judgment against him, and evidently for the purpose of preventing or impeding the collection of that judgment; it does not appear how much he paid, or that he paid anything for the mortgage, and if the security was or was under-

stood to be as inadequate as his allegations would make it appear, it is not to be supposed that he took it except at a very considerable discount. In any case his venture was largely speculative and he should be content to await its issue in the ordinary course of litigation.

In no aspect of the case, based upon the proofs before us, does the plaintiff seem to be entitled to the relief in question. On general principles and aside from special considerations which arise in this case, the claims involved are not such as are subject to equitable set-off. (*Hatch* v. *The Mayor*, etc., 82 N. Y. 442 ; *Pond* v. *Harwood*, 139 id. 111.) In both of these cases the rule is stated, in substantially the same language, that " Something more than the mere existence of reciprocal and independent demands is required to authorize a set-off in equity when not allowable under the Statute of Set-offs. Circumstances must be shown from which it can be inferred that one debt was contracted on the faith of the other, or that there was an agreement between the parties that the one should be deducted from the other, or some other intervening equity which renders the interposition of that court necessary for the creditor's protection ; " and in the latter of the two cases the court refers with approval to the statement by the vice-chancellor in *Hackett* v. *Connett* (2 Edw. Ch. 73), that " although chancery has sometimes exercised the power of decreeing a set-off, before or independently of the statute, it has only done so where mutual debts existed, and where there was either an express or implied agreement of stoppage *pro tanto*, or mutual credits." The case at bar is the farthest possible from meeting the requirements of the rule as last stated ; and if it is to be brought within the rule at all, it must be by virtue of some particular intervening equity which demands the extraordinary interposition of the court in the plaintiff's behalf. But it is very apparent, we think, that all the particular circumstances of this case make against the application of the rule and not in its favor. The fact chiefly urged as raising an equity in favor of the plaintiff is that of the insolvency of the defendant. But, as we have already said, that fact has no consequence if the claim of the plaintiff is sufficiently secured by his specific lien, and the proof largely preponderates in favor of the latter conclusion. But, even if it were otherwise, the plaintiff can assert no equity based upon the fact of insolvency. He took his assignment of the mortgage with

full knowledge of that fact, and — if the allegations of his com-
plaint are true — in the belief that the security was largely inade-
quate if not wholly worthless as such. He does not make it appear
that he paid anything for the mortgage, and he has already realized
upon it more than he had any reason to expect, and is likely to
realize a good deal more, if not the full face of the security. He
has no claim to the equitable interposition of the court in his behalf.
(*Pond* v. *Harwood, supra.*)

The order continuing the injunction must be reversed, with ten
dollars costs, and the disbursements of this appeal and the motion
denied, with ten dollars costs.

LEWIS, HAIGHT and BRADLEY, JJ., concurred.

Order appealed from reversed, with ten dollars costs, and dis-
bursements and motion denied, with ten dollars costs.